## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JON HARDIN,
an individual,

                                              Case No.:

       Plaintiff,

v.

CHARLOTTE STATE BANK
& TRUST,

       Defendant.

_____/

### COMPLAINT

**COMES NOW**, Plaintiff, JON HARDIN (hereinafter, "Plaintiff" or "Hardin"), by and through the undersigned counsel, and hereby sues Defendant, CHARLOTTE STATE BANK & TRUST (hereinafter, "Defendant" or "Charlotte Bank"). In support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

1.    This is an action for damages for Defendant's violations of the Electronic Funds Transfer Act, 15 United States Code, Section 1693a *et seq.* (hereinafter, the "EFTA") wherein Defendant: (1) failed to limit the Plaintiff's liability for unauthorized transfers from his savings account within the bounds of the EFTA; (2) failed to provisionally re-credit Plaintiff's savings

1

account for sums stolen; (3) failed to deliver investigation results timely; (4) possessed no reasonable basis to conclude that no error occurred on Plaintiff's savings account; and (5) failed to advise Plaintiff he had the right to request Defendant's decisioning documents, each in violation of the EFTA.

2.     Additionally, this is an action for damages for Defendant's violation of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), wherein Defendant communicated with Plaintiff in an attempt to collect—and actually did collection—a consumer debt from Plaintiff despite Defendant knowing that such alleged debt was not legitimately owed by Plaintiff.

## <u>JURISDICTION, VENUE & PARTIES</u>

3.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to 15 United States Code Section 1693a, *et seq.*, also known as the Electronic Fund Transfers Act ("EFTA").

4.     Supplemental jurisdiction exists permitting Plaintiffs' FCCPA claims pursuant to 28 United States Code, Section 1367 because Plaintiff's claims against Defendant under the FCCPA arise under the same set of operative facts as Plaintiff's claims against Defendant under the EFTA.

5.    Defendant is subject to the jurisdiction of this Court as Defendant regularly transacts business in this District, and the events described herein occur in this district.

6.    Venue is proper in this District as the acts and transactions described herein occur in this District.

7.    At all material times herein, Plaintiff is a natural person residing in Charlotte County, Florida.

8.    At all material times herein, Defendant Charlotte Bank is a Florida for-profit corporation existing under the laws of the state of Florida with its principal place of business located at 1100 Tamiami Trail, Port Charlotte, Florida 33953.

## EFTA STATUTORY STRUCTURE

9.    The purpose of the EFTA is to provide a "basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." *See* 15 U.S.C. § 1693(b).

10.    Regulation E is the set of federal regulations that carries out the purposes of the EFTA.  12 C.F.R. § 1005, *et seq*.

11.    The EFTA is primarily a remedial statute, the objective of which is the provision of individual consumer rights. 15 U.S.C. § 1693(a)-(b).

12.    Under the EFTA, a financial institution must follow specific "error resolution" procedures after a consumer disputes an "error," which includes an unauthorized electronic fund transfer.  *See* 15 U.S.C. § 1693f(1).

13.    The EFTA's required error resolution procedures mandate that a financial institution "investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days."  *See* 15 U.S.C. § 1693f(a)(3).

14.    If a financial institution denies a consumer's claim of error, it must explain its findings and, upon the consumer's request, provide the consumer with copies of the documents it relied upon in its investigation to conclude that an error did not occur.  15 U.S.C. § 1693f(d); 12 C.F.R. § 1005.11(d).

15.    In an action under the EFTA, a consumer may recover actual damages, statutory damages of $100.00-$1,000.00, costs, and reasonable attorneys' fees.  15 U.S.C. § 1693m(a)(1)-(3).

16.    Additionally, a court may award treble damages upon a finding that the financial institution "did not make a good faith investigation of the alleged error," "did not have a reasonable basis for believing that the

consumer's account was not in error," or "knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." *See* 15 U.S.C. 1693f(e).

## FCCPA STATUTORY STRUCTURE

17.    The FCCPA is a state consumer protection statute, modeled after the federal Fair Debt Collection Practices Act (the "FDCPA"), 15 United States Code, Section 1692, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

18.    The FCCPA imposes civil liability on any creditor/person as well as any debt collector, that engages in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

19.    Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any

person *through any medium*." *See* 15 U.S.C. § 1692(a)(2); *see also* Fla. Stat. § 559.55(2) (emphasis added).

20.    For example, the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, or from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt.  15 U.S.C. §§ 1692(d)-(e).

21.    Similarly, the FCCPA prohibits a person from: (1) collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor; and (2) collecting consumer debt by communicating with the consumer in an attempting to collect a debt that the person knows is not legitimate or by asserting a legal right that does not exist.  Fla. Stat. §§ 559.72(7) and (9).

## **GENERAL ALLEGATIONS**

22.    At all material times herein, Defendant Charlotte Bank is a "financial institution" as defined by 15 United States Code, Section 1693a(9) because it is a state or national bank, federal savings loan association, mutual savings bank, or any other person who holds an account belonging to a

consumer.

23.    At all material times herein, Plaintiff is a "consumer" as defined by 15 U.S.C. § 1693a(6) because he is a natural person.

24.    At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCCPA, Section 559.55(8) because he is an individual and allegedly obligated to pay a debt.

25.    The EFTA applies to electronic fund transfers that authorize a financial institution to *debit or credit* a consumer's account.  15 U.S.C. § 1693a(7) (emphasis added).

26.     At all materials times herein, Defendant is a "person" subject to the EFTA.  *See* 15 U.S.C. § 1693m.

27.    At all material times herein, Defendant is a "person" subject to the FCCPA.  *See* Fla. Stat. § 559.55(3); *see also Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

28.    At all material times herein, Defendant, itself and through its subsidiaries, regularly services the credit of consumers and collects debts associated with the same from consumers residing in Charlotte County, Florida.

29.    At all material times herein, Defendant attempts to collect an

alleged consumer debt from Plaintiff, specifically, an alleged debt owed by Jon Hardin, on Jon's Checking Account (as defined further *infra*) ending in -0906 (hereinafter, the "Alleged Debt").

30.     At all material times herein, Defendant acts itself or through its agents, employees, officers, members, directors, successors, predecessors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

31.     Plaintiff has retained undersigned counsel for purposes of this matter and are obligated to pay his attorneys a reasonable fee and reimburse his attorneys for reasonable costs expended in this action.

32.     Plaintiff is entitled to attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3) and Florida Statutes § 559.77.

33.     All necessary conditions precedent to the filing of this action occurred, or Defendant waived the same.

### Jon Hardin's Charlotte Bank Checking Account

34.     Plaintiff established a personal checking account with Defendant identified by a checking account number ending in -0906 (hereinafter, "Jon's Checking Account" or "Checking Account").

35.     At all material times herein, the Checking Account belonged to

Plaintiff and is a demand deposit account, established primarily for Plaintiff's personal, family, or household use—namely—Plaintiff's household bills and expenses for Plaintiff's personal care.

36.    The Checking Account is an "account" as defined by 15 U.S.C. § 1693a(2).

## William Hardin's Charlotte Bank Savings Account

37.    Plaintiff's father William Hardin established a personal savings account with Defendant identified by a checking account number ending in -2187 (hereinafter, "Savings Account").

## FACTUAL ALLEGATIONS

38.    Plaintiff's father William Hardin is not financially liable, in any manner, for debts allegedly incurred on Jon's Checking Account.

39.    The only connection between Plaintiff and his father's Savings Account is that Plaintiff is a signatory on his father's Savings Account.

40.    Plaintiff is not a joint account holder on the Savings Account.

41.    Plaintiff is not a co-maker on the Savings Account.

42.    Plaintiff is not liable for sums in the Savings Account.

43.    Plaintiff is not liable for debits incurred on the Savings Account.

44.    Plaintiff owns none of the funds in the Savings Account.

## The ACH Fraud

45.     On or about August 24, 2022, Jon Hardin was a victim of theft wherein an unknown individual, organization, or group of persons, obtained access to his Checking Account (hereinafter, "ACH Fraud").

46.     The ACH Fraud resulted in unauthorized electronic ACH transactions on Plaintiff's Checking Account as follows: August 23, totaling $4,150.00; August 24, totaling approximately $4,300.00; August 26, totaling $4,430.00 (hereinafter collectively, "Unauthorized Transactions").

47.     Each of the Unauthorized Transactions took the form of electronic instant direct debits from the Checking Account to an "Anthony FergusoniPay."

48.     In total, the ACH Fraud resulted in the electronic withdrawal and/or overdraft of at least $12,880.00 from Plaintiff's Checking Account.

49.     The total sum comprising the ACH Fraud is also referred to herein as the "Alleged Debt" or "Jon's Alleged Debt."

## Characteristics of the Unauthorized Transactions

50.     At no time did Plaintiff provide consent or authority for any individual or entity to make the Unauthorized Transactions from his Checking Account.

51.    At no time did Plaintiff provide actual or implied authority for any individual or entity to take Plaintiff's money out of the Checking Account via the Unauthorized Transactions.

52.    Plaintiff never received any of the funds from the Unauthorized Transactions.

53.    Each and every Unauthorized Transaction was made without the permission of Plaintiff and were made with entities or users that Plaintiff had never previously conducted debits.

54.    The ACH Fraud Unauthorized Transactions illustrates tell-tale signs of unauthorized fraudulent activity when considering the context of the Checking Account's transaction history, general then-current banking industry knowledge of existing scams, and the fact the Defendant itself identified the ACH Fraud, notified Plaintiff of the same, and received his confirmation that he did not execute the transactions.

### Defendant's Notification to Plaintiff
### Concerning the ACH Fraud and Unauthorized Transactions

55.    On or about August 24, 2022, Defendant called Plaintiff via telephone and inquired if he was in the process of withdrawing money from his Checking Account.

56.    In response, Plaintiff confirmed he was not making any

withdrawals from his Checking Account, told Defendant any such transactions were not authorized, told Defendant he did not participate in online banking, and directed Defendant to reverse all unauthorized transactions and affirmatively stop such future unauthorized transactions.

57.    In response, Defendant told Plaintiff that his checking account was overdrawn, and that Plaintiff owed Defendant the Alleged Debt.

58.    On the telephone call, Defendant stated that it would "recoup" the Alleged Debt from Plaintiff.

59.    The same day, Defendant made a second telephone call to Plaintiff and stated that it had decided to collect Plaintiff's Alleged Debt from funds held in his father's Savings Account.

60.    Plaintiff objected to any such collection of the Alleged Debt from his father's Savings Account.

61.    After the telephone call, but the same day, Plaintiff appeared in-person at Defendant's branch located at 3002 Tamiami Trail in Port Charlotte, Florida.

62.    During the in-person meeting at Defendant's branch, Defendant's representative stated "we don't know what to do."

63.    Plaintiff left Defendant's branch without Defendant having

provided any further explanations to Plaintiff concerning the ACH Fraud or Defendant's stated intent to collect sums allegedly owed by Plaintiff from his father's Savings Account.

64.    Later the same day, Plaintiff and William Hardin both appeared in-person at Defendant's branch located at 3002 Tamiami Trail in Port Charlotte, Florida.

65.    At no time did either Plaintiff or William Hardin verbally or in writing authorize Defendant to collect any debt allegedly owed by Jon Hardin as a result of the ACH Fraud from William Hardin or the Savings Account.

## Plaintiff's Notice to Defendant

66.    Between approximately August 24, 2022 and September 8, 2022 (but no later, in any event, than sixty (60) after Defendant's issuance of the periodic Checking Account statement showing the Unauthorized Transactions) Plaintiff informed Defendant verbally the that the Unauthorized Transactions were not authorized by Plaintiff (hereinafter, "Dispute").

67.    "Dispute" as used herein also includes any supplemental documents, information, objections, and statements Plaintiff delivered or

made to Defendant for purposes of the Dispute.

68.    Plaintiff, incident to the Dispute, provided Defendant the Checking Account number, the identity of the alleged errors (i.e., the Unauthorized Transactions), and the reasons for his belief that errors occurred.

69.    Defendant had actual knowledge that the ACH Fraud resulted from unauthorized access to the Checking Account.

70.    Defendant did not issue Plaintiff a provisional credit for the Unauthorized Transactions.

71.    Having provided no provisional credit to Plaintiff's Checking Account, Defendant's response to the Dispute was due 10-business days following Defendant's receipt of the Dispute.

72.    Defendant did not respond to Plaintiff's Dispute prior to expiration of the EFTA's notice deadline.

73.    In fact, to date Defendant has not respond to Plaintiff's Dispute.

74.    Upon information and belief, Defendant denied the Dispute.

75.    Upon information and belief, Defendant did not conduct an investigation of the Dispute.

76.    Plaintiff has been physically sick, suffered confusion, fatigue,

humiliation, anxiety, hopelessness, despair, worry, loss of sleep, inconvenience, and annoyance, as a result of Defendant's failures to comply with the EFTA despite the fact that no reasonably diligent investigation could have concluded that the Unauthorized Transactions were a result of the Plaintiff's authorized acts.

## **Defendant's Debt Collection**

77.    On or about August 24, 2022, Defendant's representative, on behalf of Defendant, verbally claimed, attempted, or threatened to enforce Jon's Alleged Debt against Plaintiff's father William despite Defendant possessing knowledge that no right to collect Jon's Alleged Debt from his father existed.

78.    Defendant's verbal statements each qualify as a "communication" as defined by the FCCPA, Section 559.55(2) because Defendant conveyed a demand for payment on Jon's Alleged Debt to both Plaintiff and his father.

79.    Between August 22 and August 25, 2022, Defendant willfully collected Jon's Alleged Debt (a consumer debt) from Plaintiff's father via the Charlotte Bank Withdrawals despite the absence of any legal right to do so and despite Defendant possessing knowledge that no right to collect Jon's

Alleged Debt from Plaintiff's father existed.

80.   On or about August 22, 2022, Defendant made an unauthorized electronic debit from Plaintiff's father's Savings Account in the amount of $2,150.00 to satisfy Jon's Alleged Debt.

81.   On or about August 23, 2022, Defendant made an unauthorized electronic debit from Plaintiff's father's Savings Account in the amount of $2,500.00 to satisfy Jon's Alleged Debt.

82.   On or about August 24, 2022, Defendant made an unauthorized electronic debit from Plaintiff's father's Savings Account in the amount of $2,500.00 to satisfy Jon's Alleged Debt.

83.   On or about August 25, 2022, Defendant made an unauthorized electronic debit from Plaintiff's father's Savings Account in the amount of $7,381.00 to satisfy Jon's Alleged Debt.

84.   In total, between August 22 and August 25, 2022, Defendant collected $14,531.00 from Plaintiff's father as a means of collecting the Alleged Debt from Plaintiff.

85.   The aforementioned unauthorized electronic withdrawals described in paragraphs 79-84 are hereinafter referred to as "Charlotte Bank Withdrawals."

86.     After collecting Plaintiff's Alleged Debt from Plaintiff's father, Defendant left Plaintiff's father with a sum total of 0.174 cents in his Savings Account.

87.     Plaintiff has been physically sick, suffered confusion, fatigue, humiliation, anxiety, hopelessness, despair, worry, loss of sleep, inconvenience, and annoyance, as a result of Defendant's claims, attempts, threats to collect, and actual collection of Jon's Alleged Debt from his father.

**COUNT ONE:**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 UNITED STATES CODE, SECTION 1693f(a)(3)**
**(Failure to Conduct Investigation of All Errors)**

88.     Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

89.     Defendant is subject to, and violated the provisions of, 15 U.S.C. § 1693f for failure to properly follow the error resolution procedures set forth therein for each error and Unauthorized Transaction.

90.     A court may award treble damages upon a finding that a financial institution "did not provisionally recredit a consumer's account within the ten-day period … and the financial institution did not make a good faith investigation of the alleged error …" *See* 15 U.S.C. 1693f(e)

91.    Defendant made no provisional recredit to Plaintiff's Checking Account.

92.    When Plaintiff notified Defendant of the errors with regard to the Checking Account (i.e., the Unauthorized Transactions), Defendant was required to conduct an investigation into the same in compliance with the EFTA.  15 U.S.C. § 1693f(a)(3).

93.    Defendant did not investigate each error alleged in Plaintiff's Dispute.

94.    Instead, Defendant—upon knowledge and belief—did not conduct any investigation into the Unauthorized Transactions.

95.    As such, Defendant has violated 15 U.S.C. § 1693f(3) by not conducting any investigation of each Unauthorized Transaction (i.e., error) at issue herein.

96.    Defendant is liable for treble damages because it did not re-credit Plaintiff's Checking Account and did not make a good faith investigation of the alleged errors identified in the Dispute and investigated *none* of the Unauthorized Transactions listed in the Dispute and alleged herein.

97.    As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m(a) and 1693f(e).

**COUNT TWO:**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 UNITED STATES CODE, SECTION 1693f(a)(3)**
**(Failure to Provide Timely Investigation Results)**

98.     Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

99.     Defendant is subject to, and violated the provisions of, 15 U.S.C. § 1693f(a)(3) by failing to report or mail the results of any investigation and determination to Plaintiff within 10 business days.

100.    Between approximately August 24, 2022 and September 8, 2022 (but no later, in any event, than sixty (60) after Defendant's issuance of the periodic Checking Account statement showing the Unauthorized Transactions) Plaintiff notified Defendant of the errors with regard to the Checking Account (i.e., the Unauthorized Transactions) by communicating his Dispute to Defendant.

101.    Defendant did not recredit Plaintiff's Checking Account for the amount alleged to be in error within 10-business days of Plaintiff's Dispute, or at any time.

102.    Defendant, measuring from September 8, 2022 was required to report or mail the results of any investigation of the Dispute on or before September 22, 2022 (10-business days following the latest known likely date

Defendant was informed of the Dispute).

103.  In the event a provisional credit did occur (which Plaintiff does not allege or concede), then Defendant's response to the Dispute was due by October 23, 2022 (45 days following September 8, 2022).

104.  Defendant did not report or mail the results of its investigation and determination to Plaintiff.

105.  As such, Defendant has violated 15 U.S.C. § 1693f(3)(1) by not timely reporting or mailing the results of any investigation of the Dispute to Plaintiff.

106.  As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m(a).

**COUNT THREE:**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 UNITED STATES CODE, SECTION 1693f(d)**
**(Failure to Provide Notice of Entitlement to Decisioning Documents)**

107.  Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

108.  Defendant is subject to, and violated the provisions of, 15 U.S.C. § 1693f(d) for failing to include notice of Plaintiff's right to request reproduction of Defendant's decisioning documents within any Dispute denial communication.

109.   On information and belief, Defendant did not issue any Dispute denial communication to Plaintiff.

110.   Notwithstanding failing to issue a Dispute denial communication to Plaintiff, Defendant found an absence of error on the Checking Account.

111.   Defendant failed to provide notice to Plaintiff, within any Dispute denial communication or by any other means, that upon Plaintiff's request, Defendant would promptly deliver or mail Plaintiff reproductions of all documents that Defendant relied upon to conclude that no error occurred on the Checking Account.

112.   As such, Defendant has violated 15 U.S.C. § 1693f(d) by not including notice of Plaintiff's right to request reproductions within any Dispute denial communication.

113.   As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m(a).

## COUNT FIVE
## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT
## 15 UNITED STATES CODE, SECTION 1693g(a) and 1693g(e)
### (Assertion of Consumer Liability in Excess of EFTA Limits)

114.   Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

115.   Defendant is subject to, and violated the provisions of, 15 U.S.C. § 1693g(a) and (e) for its assertion that Plaintiff is liable for the Unauthorized Transactions in excess of the EFTA's consumer limits where Defendant was informed of the Unauthorized Transactions within 60-days of transmittal of the first periodic statement showing the Unauthorized Transactions.

116.   The Unauthorized Transactions out of Plaintiff's Checking Account by an authorized means of access are transactions subject to the EFTA, and as such, qualify as "unauthorized electronic fund transfers." *See* 15 U.S.C. § 1693a(2).

117.   In such circumstances, Plaintiff's liability is limited pursuant to 15 U.S.C. § 1693g(a) and 12 CFR § 1005.6.

118.   The full extent to Plaintiff's entire liability is limited to such sums. *Id.* at § 1693g(e) ("[e]xcept as provided in this section, a consumer incurs no liability form an unauthorized electronic fund transfer").

119.   In order to assert full liability against Plaintiff, as claimed by Defendant, Defendant bears the burden to establish that the Unauthorized Transactions were authorized. *Id.* at § 1693g(b).

120.   Because the first Unauthorized Transactions at issue herein appeared on the statement closing August 31, 2022, and because Defendant

was advised of the Unauthorized Transactions on or before September 8, 2022 (i.e., within at least 60 days of the August 2022 statement), Plaintiff was liable for, at most, $500.00 in total (consisting of the sum of $500.00 listed in 12 C.F.R. § 1005.6(b)(2)).

121.    Despite Defendant having actual knowledge of the unauthorized nature of the Unauthorized Transactions, Defendant has asserted that Plaintiff is liable for all sums withdrawn from the Checking Account as a result of the Unauthorized Transactions.

122.    As such, Defendant has violated 15 U.S.C. § 1693g(a) and (e) by asserting Plaintiff's liability for the Unauthorized Transactions above what is lawfully permitted.

123.    As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m(a).

**COUNT SIX:**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 UNITED STATES CODE, SECTION 1693f(e)**
**(Lack of Reasonable Basis to Believe Absence of Error**
**and Incorrect Willful Conclusion of No Error Despite Lack of Evidence)**

124.    Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

125.    Defendant is subject to, and violated the provisions of, 15 U.S.C.

§ 1693f by failing to properly follow the error resolution procedures set forth therein for each error and Unauthorized Transaction.

126. When Plaintiff notified Defendant of the Unauthorized Transactions and that the same represented errors, Defendant was required to conduct an investigation into the same in compliance with the EFTA. 15 U.S.C. § 1693f(a)(1)-(3).

127. A court may award treble damages upon a finding that a financial institution "did not provisionally recredit a consumer's account within the ten-day period … and the financial institution … did not have a reasonable basis for believing that the consumer's account was not in error," or "knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." *See* 15 U.S.C. 1693f(e).

128. Upon receipt of Plaintiff's Dispute, Defendant did not provisionally credit Plaintiff's Checking Account and did not make a good faith investigation of the alleged errors.

129. Upon receipt of Plaintiff's Dispute, Defendant did not provisionally credit Plaintiff's Checking Account and did not have a

reasonable basis for believing that Plaintiff's Checking Account was not in error, for reasons stated herein.

130.   Defendant did not adequately investigate the alleged errors and rather, just summarily denied the Dispute, without any analysis or good faith investigation.

131.   Defendant could not have reasonably or in good faith concluded that Plaintiff, who had no past pattern or practice of making ACH transfers to a payee named "Anthony FergusoniPay" committed or authorized any of the Unauthorized Transactions.

132.   Defendant had the ability to obtain, review, and consider the identifying information related to the "Anthony FergusoniPay" ACH transactions but did not research the merchant, individual, or any payee information.

133.   Defendant had the ability to ask Plaintiff or William Hardin any specific questions but did not do so or did not do so thoroughly.

134.   Defendant had the ability to review all aspects of a relevant police report Plaintiff shared with Defendant inclusive of all information and persons listed in the same (case number 2208-014706 by Officer S. Friend, Badge No. 3226, phone number 941-639-2101) but Defendant did not do so.

135.   Defendant had the ability to, but did not, review and consider the circumstances of the ACH Fraud.

136.   Defendant had the ability to, but did not, did not take into consideration the affirmations and narrative facts Plaintiff and William Hardin provided Defendant.

137.   Defendant had the ability to, but did not, make any telephone calls, faxes, e-mails, or other inquiries concerning the facts of the Unauthorized Transactions to individuals or entities that might have reasonably had knowledge of the Unauthorized Transactions.

138.   Defendant did not make any inquiry into the lack of ties between Plaintiff and the ACH payee user or the ACH payee user's physical location.

139.   Defendant did not analyze the sums comprising the ACH Unauthorized Transactions or attempt to discern any patterns associated with the time, manor, method, means, or location of such debits.

140.   Defendant did not contact any third-parties in the course of investigating the Dispute.

141.   As such, Defendant did not conduct a reasonable good faith investigation, had no reasonable basis to reach its conclusion that no error occurred, and did not have a reasonable basis for believing that the Checking

Account was not in error.

142.   Additionally, Defendant knowingly and willfully concluded that Plaintiff's Checking Account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendant.

143.   No evidence available to Defendant would have substantiated a finding that Plaintiff — who had no past pattern or practice of making large single-day ACH debits payments — authorized the Unauthorized Transactions.

144.   As such, Defendant has violated 15 U.S.C. § 1693f(a)(3) and (e) by failing to conduct a good faith investigation into the Unauthorized Transactions, not possessing a reasonable basis for believe that the Checking Account was not in error, and knowingly and willfully concluding that the Checking Account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of investigation.

145.   As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages as defined by 15 U.S.C. § 1693m and 1693f(e).

## COUNT SEVEN:
### UNLAWFUL DEBT COLLECTION PRACTICE –

**VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)**

146.   Plaintiff re-alleges paragraphs one (1) through eighty-seven (87) as if fully restated herein and further states as follows:

147.   Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by attempting to collect the Alleged Debt from Plaintiff or a member of his family (i.e., his father) through means which can reasonably be expected to abuse or harass Plaintiff.

148.   Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Alleged Debt and asserting the existence of a legal right to do so from both Plaintiff and his father, despite Defendant the non-existence of any such legal right and despite Defendant possessing knowledge that the Alleged Debt was the product of fraud and not legitimate.

149. Specifically, on or about August 24, 2022, Defendant's representative, on behalf of Defendant, verbally claimed, attempted, or threatened to enforce Jon's Alleged Debt (a consumer debt) against Plaintiff's father despite Defendant possessing knowledge that no right to collect Jon's Alleged Debt from Plaintiff's father existed.

150.   On or about August 24, 2022, Defendant possessed knowledge

that the Alleged Debt was the product of fraud and Defendant had no right to collect such debt from Plaintiff.

151.   Between August 22 and August 25, 2022, Defendant willfully collected Jon's Alleged Debt from Plaintiff's father via the Charlotte Bank Withdrawals despite the absence of any legal right to do so and despite Defendant possessing knowledge that no right to collect Jon's Alleged Debt from Plaintiff existed.

152.   As such, Defendant knowingly attempted to, and did, collect Jon's Alleged Debt from Plaintiff's father despite Defendant knowing that Plaintiff's father was not personally liable for Jon's Alleged Debt.

153.   Defendant's conduct served no purpose other than to abuse and harass Plaintiff and a member of his family based on no more than Defendant's unilateral decision to "recoup our money" from Plaintiff by any means.

154.   Defendant's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Sections 559.72(7) and (9).

155.   As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests entry of:

a.      Judgment against Defendant for maximum statutory damages for violations of the EFTA;

b.      Judgment against Defendant for actual damages under the EFTA and treble damages, in an amount to be determined at trial;

c.      Judgment against Defendant for maximum statutory damages for violations of the FCCPA;

d.      Judgment for actual damages under the FCCPA, in an amount to be determined at trial;

e.      An award or reasonable attorneys' fees and costs;

f.      All other relief; and

g.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper,

electronic documents, or data — pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Jordan T. Isringhaus*
**Jordan T. Isringhaus, Esq., FBN 0091487**
Aaron M. Swift, Esq., FBN 0093088
Jon P. Dubbeld, Esq., FBN 105869
Sean E. McEleney, Esq., FBN 125561
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Phone: (727) 490-9919
Fax: (727) 255-5332
jisringhaus@swift-law.com
aswift@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Co-Counsel for Plaintiff*

*and*

**BANNON LAW GROUP**

*/s/ G. Tyler Bannon*
**G. Tyler Bannon, Esq., FBN 0105718**
1901 Dr. M.L. King Jr. Street N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jessica@rbannonlaw.com
*Co-counsel for Plaintiff*